Merrimack, }
May 6, 1924. }

## JOHN M. JOHNSON v. DIRECTOR-GENERAL OF RAILROADS.

In case for negligence in the management of a train at a highway grade crossing, whereby the operator of an· automobile was injured, instructions as to the duty of the defendants on discovering the plaintiff's peril were properly refused where no evidence was produced that the engineer saw the car in the highway until just before he attempted to stop the train.

Where an injury and the danger thereof result from the same cause — the negligent inattention of both parties — there can be no recovery therefor.

The court may properly refuse to give particular instructions which are not warranted by the evidence.

CASE, to recover for personal injury received in a collision upon a highway grade crossing between a Ford roadster driven by the plaintiff and a train of the Boston & Maine Railroad. Trial by jury and verdict for the defendant. At the close of the evidence, the defendant moved that a verdict be directed for him, which motion was denied and he excepted. The plaintiff requested the court to instruct the jury as follows:

1. If the defendants, upon their discovery that the plaintiff was in danger, could by the exercise of ordinary care have avoided the accident, the defendants are liable, provided the plaintiff Johnson upon discovering the danger could not have avoided the injury even though the plaintiff Johnson may have been negligent in getting into a position of danger.

2. The law does not justify an avoidable injury to another. Even though the plaintiff may have been negligent in seeking to cross the track in front of the approaching car, it was still the duty of the defendants' servants in charge of the car to exercise ordinary care to avoid injury to the plaintiff.

3. If the defendants' trainman saw the plaintiff Johnson and knew that he was in a position of danger or was likely to be, from which through want of consciousness of the danger the plaintiff could not save himself, then, if by the exercise of ordinary care the defendants' trainman could have avoided the accident, it was his duty to do so, and if he did not, the defendants would be liable, even though the plaintiff may have been careless in getting into the position of danger.

4. If ordinary care on the part of the defendants' trainman, after he knew of the plaintiff's danger, would, and ordinary care

on the part of the plaintiff after he was conscious of the danger would not have prevented the accident, then the defendants are liable.

5. If the defendants had notice that the plaintiff was about to cross their track in season by the exercise of ordinary care to have refrained from entering upon the crossing with their train and the defendants failed to exercise such care, and in consequence of such failure the plaintiff was injured, then the defendants would be liable even though the plaintiff may have been negligent in entering the crossing as he did.

The instructions requested were not given and the plaintiff excepted. Transferred by *Sawyer*, J.

*Nathaniel E. Martin, Robert W. Upton* and *Edward C. Niles* (*Mr. Niles* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendant.

PARSONS, C. J.   The court may properly refuse to give particular instructions which are not warranted by the evidence, *Richmond* v. *Bethlehem*, 79 N. H. 78, 80; *Osgood* v. *Maxwell*, 78 N. H. 35, 38; *Challis* v. *Lake*, 71 N. H. 90, 95, while it is reversible error to submit to the jury an issue upon which there is no evidence. *Benoit* v. *Perkins*, 79 N. H. 11, 14. Assuming, therefore, as the defendant does in his brief, that the plaintiff correctly states the law in his request for instructions, the question presented by the case, which may be considered one of law because here cognizable, is merely one of fact whether there was evidence upon which it could be found that the trainmen knew the plaintiff's danger in time to have prevented the injury.   Upon this question the only evidence to be considered is the situation and acts of the parties present at the time.   Evidence of prior negligence of either is immaterial.   "The law deals with their behavior in the situation in which it finds them at the time the mischief is done, regardless of their prior misconduct."   *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159, 164. So much of the discussion for the plaintiff in brief and argument as relates to the conduct of the parties prior to the time when the collision became imminent is therefore inapplicable.   It is not claimed that after the plaintiff's car was on the crossing, or after the time when the plaintiff was endeavoring to stop it by the application

of the brakes, the trainmen could have prevented the collision. The case therefore presented nothing for the jury upon the issue now under consideration unless there was evidence from which it could be found that the trainmen, knowing the plaintiff was approaching the crossing, knew or ought to have known in season to have prevented the collision that he was approaching it in ignorance of the danger. If there was evidence upon which this finding could be made, the case was for the jury. If there was no such evidence, there was nothing for the jury. The plaintiff was driving a Ford car on the highway toward a dangerous grade crossing of which he knew, and which was the subject of conversation between himself and his companion as they approached it. He did not see the train until close to the crossing, when he applied the brakes, but his car did not stop and went onto the crossing. The defendant's train was made up with a freight car in advance of the engine, upon which stood a trainman on the watch. This trainman saw the top of the approaching automobile when the front end of the train was about 160 feet from the crossing. The trainman could not then see the occupants of the car, but there was nothing about its operation to lead him to think the plaintiff was not intending to stop before reaching the crossing until the plaintiff came within about 15 feet of the crossing, when, realizing the plaintiff was going onto the crossing, the trainman gave the stop signal to the engineer. At practically the same moment the engineer in the engine-cab saw the car and applied the brakes, but the train did not stop until its full length had passed beyond the crossing. The plaintiff called a witness as an expert, who testified that in his opinion such a train could, if the brakes were in order, be stopped within fifty feet if going at the rate of twelve miles per hour, which was the speed as testified by some witnesses. The engineer testified that when he saw the car and put on the brakes, the front end of the train was about eighty-two feet from the crossing. The plaintiff argues that as the train did not stop within fifty feet, as his expert testified it might be stopped, the engineer did not put on the brakes when he said he did and his failure to stop the train before the crossing was reached could be found to be negligence and the sole cause of the accident. There is no conflict in the evidence as to the time when the brakes were applied. Even if they were not applied until after the crossing was reached, as the plaintiff suggests may have been the case, the train ran its full length and more beyond the crossing, a distance of nearly three hundred feet. Estimates of distance and speed

and of the distance within which it is possible to stop a train are largely speculative, may be, and often are, unreliable. But in this case we have, as in *Stearns* v. *Railroad,* 75 N. H. 40, 47, a demonstration that this train at the speed it was moving, whatever that was, with the brakes in the condition they were, good or bad, could not be stopped in less than about three hundred feet. As it could not be found the train could have been stopped in season to have prevented the collision after the engineer saw the car, the failure to stop is not negligence in the operating crew. Negligence in the speed of the train, in the condition of the brakes, or in the arrangement of the train with a freight car in advance of the engine, is immaterial on the question, which is, what the trainmen could do at the time, in the existing situation, with the means at their command. It is argued that at least an alarm should have been sounded when the trainman saw the top of the plaintiff's car. There are several answers to this claim. (1) If this was negligence, the plaintiff could have recovered if himself free from fault. (2) There was no evidence the plaintiff was then proceeding in ignorance of the danger of the crossing before him. He and his companion both testified they knew the danger and had it in mind. It could not be found from the trainman's observation of the car proceeding in the ordinary manner on the highway that he ought to have concluded contrary to the fact that the plaintiff was driving his car in ignorance of, or without attention to, the situation. *Morier* v. *Hines, ante,* 48; *Stearns* v. *Railroad,* 75 N. H. 40, 45; *Waldron* v. *Railroad,* 71 N. H. 362, 365; *Gahagan* v. *Railroad,* 70 N. H. 441, 442.

In *Cavanaugh* v. *Railroad,* 76 N. H. 68, the engineer testified that he saw the teams on the highway eight rods and more from the crossing at a time when he could have stopped the train before reaching it and that the teams did not slacken their speed as they usually do, while there was evidence the brakes were not applied or the whistle sounded until just before the crossing was reached. From this evidence it was considered it could be found the engineer knew the teams were approaching the crossing in ignorance of the coming train at a time when he could have given warning or applied the brakes in season to have avoided the accident. There are no such facts in the present case. It falls rather within *Gahagan* v. *Railroad,* 70 N. H. 441, in which it was thought "there was no evidence that the defendant's servant knew Gahagan was proceeding without appreciating the danger, while in the *Cavanaugh* case there was evidence that the engineer knew the traveler was uncon-

scious of her peril. Because the defendant had superior knowledge of the situation it was held liable in the *Cavanaugh* case; while lack of proof of such knowledge was held fatal to the plaintiff in the *Gahagan* case." *Lee* v. *Hustis*, 79 N. H. 434, 435.

Furthermore, (3) while it appeared the trainman on the car could signal the engineer to stop, it did not appear he could sound an alarm on the whistle or signal the engineer to do so. While it may be negligence to operate a train without someone on the extreme front in control of the train, such negligence is not subsequent to the negligent occupation of a highway crossing by a traveler.

It could not be found that an alarm on the whistle by the engineer when he first saw the plaintiff's car, instead of the application of the brakes, would have prevented the injury. At this time the plaintiff had all the information the whistle could have given him and was endeavoring to stop. If the engineer could have earlier seen the car on the highway, his lack of attention, if negligent, would be concurrent with the plaintiff's failure to observe the train. Where the injury and the danger result from the same cause, the negligent inattention of both parties, there can be no recovery. *Cavanaugh* v. *Railroad*, 76 N. H. 68; *Gibson* v. *Railroad*, 75 N. H. 342; *Batchelder* v. *Railroad*, 72 N. H. 528. There was no evidence the engineer saw the car in the highway until just before he attempted to stop the train. If he did see it earlier and his failure to act would have made a case for the plaintiff, the plaintiff fails because he has not sustained the burden of proof.

The recent case of *Romani* v. *Railroad*, *ante*, 206, cited by the plaintiff, did not raise the question now presented. It was not contended in that case that the defendant could have avoided the injury after the plaintiff's negligence had created the danger, but the defendant claimed the evidence conclusively established the plaintiff's fault as the sole cause of the injury; in other words, that the plaintiff's care could not be found upon undisputed evidence.

In this case the superior court in denying the defendant's motion for a directed verdict ruled on this question in the plaintiff's favor, and no question as to the accuracy of such ruling has reached this court.

*Exception overruled.*

SNOW, J., was absent: the others concurred.